This case is 3-18-0397, City of Peoria Council, you may proceed May it please the Court, my name is Kevin Day and I'm representing the City of Peoria This matter comes before the Appellate Court for the second time Mr. Grant's occupational disease claim was previously remanded by this Court to the Commission for proper application of the Section 1B presumption On remand, the Commission determined the City of Peoria successfully rebutted the presumption However, they ultimately found Mr. Grant to prove accidental violation by a precondition to the evidence The Commission's decision was then affirmed by the Penitentiary On the field, the City of Peoria presents six arguments First, the City of Peoria has not waived its argument that there is an insufficient foundation to support the testimony of Dr. Orr Second, the City of Peoria has consistently argued that Dr. Orr's testimony is biased, unsupported by the facts of this case and contrary to the relevant medical literature issued A foundational objection was made at Dr. Orr's deposition in this regard This has been a focal point of the City's arguments at each stage of this litigation, including its arguments before the Commission The record before the Commission and this Court is a repeat of facts and legal arguments in this regard and the argument should be considered on its merits The City of Peoria's second argument is in the alternative If this Court determines that the foundational argument is in fact subject to the waiver doctrine an exception should be applied by this Court and the argument should be considered on its merits In this regard, Illinois courts have held the waiver doctrine is neither rigid nor inflexible Illinois law acknowledges multiple exceptions to the waiver rule One, in situations where the issue is a question of law that has been fully briefed by the parties Two, for consideration of the issue of further justice and the public interest and three, for consideration of the issue of maintaining a sound and uniform body of precedent All three of these objections apply here First, the question of whether... All right, let's get to the real issue in this case Since you made an objection, I'll object to the foundation given his opinion and let us assume that the Commission was wrong and the Circuit Court was wrong when they say this is a waiver Now, how about the question of whether it was an abuse of discretion on the part of the Commission? Sure, Your Honor In this regard, I will submit that the standard of review is actually de novo It is not the abuse of discretion standard applied by the Circuit Court in this case I think the Deterred District has established case law in this regard The determination being specifically whether a sufficient foundation exists for a doctoror's testimony If that's a question of law, it is subject to the de novo standard and Mr. Grant has not disputed this fact for this argument in his response in three The de novo standard, as the Court knows, is to be applied also when the facts essential to the Court's analysis are undisputed and the Court's review only involves an application of the law Aside from that issue, I'm trying to find out what exactly your specific objection is If an expert testifies, as Oris testified, that his or her opinion was based on a reasonable degree of expert certainty within the field, etc., etc. Why was that not a sufficient foundation? It was not a sufficient foundation, Your Honor, because he based his opinion primarily on two things The medical literature that he asserts he reviewed and provided an opinion on and secondly, which grants occupational exposure Neither of those basics in which Dr. Oris phrases those are consistent with the record before this Court and they therefore cannot form the foundation for his Oh no, they can form the foundation and now they go to the wake and the credibility of the witness who testifies The fact that you want to turn around and say, wait a minute he didn't make a foundation because his opinion is based on a fact that we don't believe is true This man testified that his causation opinion was based upon the claimant's history of exposure knowledge of the types of chemicals to which firefighters are typically exposed when fighting fires the latency period of 20 years, which is approximately the length of time that he worked for the department and his clinical judgment and knowledge in the field So in that particular case, what you're arguing goes to the wake It doesn't go to admissibility Because in many cases, by the way, the expert gives his opinion based upon a foundational finding before the evidence that ever contradicts the basis of his opinion ever comes in So it doesn't go to foundation, it goes to wake I would respectfully submit that it goes to both Well, you can respectfully submit it, but you're wrong But go ahead, what's the argument? The argument, Your Honor, is that the type of evidence to form the foundation for an expert's opinion must be the type of evidence that is reasonably relied upon within that particular field, informing the opinions or inferences and the Burman's case is instructive in that regard and that's not the case here Specifically with regard to the medical literature and this is particularly apparent when we examine Dr. Roverson's own co-edited book The Firefighter Safety and Health Book That text establishes a lack of elevated risk between firefighters and kidney cancer It directly contradicts his opinion in this matter and that's part of what he based his opinion on Therefore, I would submit that there is no foundation for his opinion In addition, like you said, a lot of these arguments do also serve a second function which is the weight to be afforded to the expert's opinion, which I will also touch on Back to the Firefighter Safety and Health Book He asked authors to come in and provide and assess the occupational risks of firefighters With regard to the relationship between kidney cancer and firefighters the text expressly concludes the eight epidemiologic studies that assess kidney cancer in firefighters did not show consistently elevated risk I would ask this court to question how Dr. Roverson's book can conclude that there is not a consistently elevated risk of renal cell carcinoma in firefighters but here, opine that Mr. Grant was in fact at an increased risk Dr. Roverson's work in this regard undermines any foundational basis for his opinion It is also important to note that the eight epidemiologic studies that he relied upon in that chapter are also the same studies submitted by the City of Florida in our Exhibit 6 The Risk of Kidney Tumors in Firemen Dr. Orris indicated that he referred to this study throughout his career He further agreed that the report's conclusion is that there is only limited evidence that the occupational exposures of firefighters increase the risk of kidney cancer That particular study, Peoria Exhibit 6, concludes In conclusion, it is consistent, pardon me, it is considered that there is limited evidence that exposure entailed as a fireman increases the risk of kidney cancer There is not an automatically more likely than not probability that kidney cancer in a fireman is a result of occupational exposures Dr. Orris also discussed the medical text submitted by the Respondent Exhibits 3, 4, and 5 and recognized those treatises as authoritative in the area of urology Dr. Orris also acknowledged that those treatises consistently concluded firefighting was not an occupational risk for the development of renal cell cancer These texts also established renal cell carcinoma is not considered an occupationally associated tumor Dr. Orris further testified that approximately 80% of renal cell carcinoma cases are considered idiopathic in nature meaning that doctors are unable to identify the cause of the kidney cancer Moving on to the second alleged basis for Dr. Orris' testimony the exposure history provided by Mr. Grant This occupational exposure is speculative and it is inaccurate Dr. Orris had minimal speculative knowledge of Mr. Grant's alleged exposures One example being there was confusion between Dr. Orris and Mr. Grant in his own brief to the extent to which Mr. Grant was actually employed by the city of Peoria before he became diagnosed with renal cell carcinoma It's commonly referred in the brief and in Dr. Orris' report that he served 20 years There's actually discussion as to the importance of a 20 year latency period in this case and in fact Mr. Grant served approximately 18 years at the time he was diagnosed Further, Mr. Grant was provided a self-contained breathing apparatus throughout the course of his employment with the city of Peoria This would limit any exposure to harmful air that he would have sustained Although Mr. Grant did testify that there were particular times when he did not wear the self-contained breathing apparatus such as during the overhaul phase these one-week exposures would not be sufficient to cause the renal cell carcinoma Further, there's speculative testimony as to the extent to which he removed the self-contained breathing apparatus the number of fighters he reviewed that as and Dr. Orris drew conclusions based on speculative data here Further, after he was promoted to engineer in 1999 approximately 9 years after he would become employed by the city of Peoria Mr. Grant was tasked with primarily making sure the fire machine and pump were maintained and working at all times and this occurred approximately 50 feet away from the fire There's also a question of whether Dr. Orris relied upon 2,100 runs over the course of a year although he later tried to clarify that I think a significant question still exists as to what he actually based his opinion on here Dr. Orris' testimony at the end of the day was based on conjecture and his testimony is too speculative to be reliable and it's too speculative and inaccurate to form a foundation for his opinions All right, you had your own expert, was that Eggener? Yes, sir And he testified to a conclusion opposite to that of Orris? Yes, he did, Your Honor And the commission believed Orris? They did And so our next argument, Your Honor I appreciate the segue with me The fourth argument would be based on a manifest way of the evidence standard the commission erred in determining that Dr. Orris was more persuasive than Dr. Eggener A fine is against the manifest way of the evidence if the record before the court indicates an opposite conclusion was clearly an improper result What does that mean? Do we re-weigh the evidence? No, you do not re-weigh the evidence, you look at the record before you And if there is any competent evidence in the record that supports the commission's decision it's not against the manifest way of the evidence I will submit that the totality of the record before the court in this particular case shows that the clear conclusion should have been that Dr. Eggener was more persuasive And that's interesting because here's your hurdle there As you know, the law is well settled that the credibility and the believability of expert testimony and the weight to be given to the expert testimony is exclusively within the province of the commission They can choose to believe one expert over the other, which is they did in this case So how do you make the argument that they can't do that? I'm not arguing that, Your Honor I would submit that if you get past the foundational argument and you reach this manifest worthy argument, which clearly I would submit you know, we don't even need to get to the manifest way that standard is there for a reason and it's there because when the totality of the record before this court is examined the testimony of the respective experts are examined the medical literature is examined and the testimony of both witnesses at arbitration regarding the exposure that this particular individual suffered I believe that the conclusion that the commission reached is contrary to the proper result here and that's what the manifest way of the evidence is Well, you can say that, but you're conflating the assessment of the expert's credibility with standard of review Obviously, you would have to knock out the testimony of Morris because if Morris' testimony stands in the record the commission can look at that, weigh that, compare it to Eggener's and make a decision In this case, that's what they purported to do They believed Morris clearly over Eggener So, to tell me it's against the manifest way of the evidence isn't telling me anything Why is it against the manifest way of the evidence? It's against the manifest way of the evidence because the opposite conclusion is clearly apparent Why is the opposite conclusion clearly apparent? Were you dancing around the issue here? Because Dr. Eggener is a neurotic oncologist He specializes in the care of patients with cancers of the genital and urinary tract His opinions are consistent with the medical literature and the pediatology studies Dr. Morris' are not Dr. Morris' testimony is based on inaccurate data, as I've discussed They're also contrary to the medical literature Dr. Morris readily acknowledged that he would refer a patient with tibia cancer to a neurotic oncologist such as Dr. Eggener He further indicated that he would defer to a neurotic oncologist's treatment plan with regard to treatment of tibia cancer He also would defer to a neurotic oncologist in terms of making the diagnosis for the type of cancer He, in fact, testified he would defer to Dr. Eggener's characterization of the type of cancer Mr. Graham was suffering from and with regard to grading the level of Mr. Graham's so-called anoma So, my submission is that... So, how does that, all of that deferring to your expert by the claimant's expert That's in the realm of treatment proper treatment for diagnosis Okay And we know the claimant has this condition Isn't the real issue as to what either cause or more likely aggravated, etc. whatever your theory is or the claimant's theory is Did he ever defer to your expert on that? He did not Okay, and isn't that really the issue before the commission? The issue before the commission as I would submit it is the fact that Dr. Morris is not as credible Sorry, Dr. Morris' credibility It's not our opinion, it's the commission's opinion Absolutely His qualifications are not equal to that of Dr. Eggener Dr. Eggener is a more qualified individual and his testimony should have been given more weight That conclusion is... Why is he more qualified that therefore his view of the causative aspect of this condition should be accredited, given more weight as opposed to Dr. Morris' Dr. Eggener, his professional experience and mainly his review of the epigenologic and medical literature here His opinions are in line with that literature All of the literature that's been submitted to this court For Dr. Morris, his opinions are not consistent He acknowledges the texts that were submitted to him on cross-examination but then, similarly to his book, which he co-edited he just takes a step back and says Well, I don't agree with that conclusion So you can't rely on this medical literature admit that it's the state of the art and the standard to be assessed in determining the causative endothelial carcinoma and then take a step back and say Well, but I don't agree with that So the medical literature, I think, is what makes Dr. Eggener's opinion different than Dr. Morris' Okay, tell me about Morris' book What's it based on? It's research, isn't it? It's based on eight epigenologic studies Correct Both parties agree that those epigenologic studies are important and that the state of the art standard in endothelial carcinoma in determining causation and his own authors that he recruited determined that based on those eight studies which we've also submitted in another study the conclusion is there's more likely than not finding that endothelial carcinoma is caused by firefighting or the exposures that are related to firefighting assuming that Mr. Grant suffered exposures as he claims That's Oris' book? That is Oris' own book, Your Honor So he did a review of the literature and the literature consistently says there's no evidence that it's more likely than not that these exposures would cause the existence of this cancer That is correct, Your Honor That's Oris' book That's Oris' book He did not author that chapter on endothelial carcinoma and tibia cancer by the Associates between Firefighters but he recruited the authors and he edited that entire chapter So that is his publication and when cross-examined at his deposition with that book which the petitioner never brought up Dr. Oris didn't bring up during his own testimony and say, hey, I've actually studied on this particular issue the association between tibia cancer and firefighters that was actually brought up by the city of Peoria in his cross-examination he just takes a step back and says well, I recruited them but I don't agree with the conclusion What did he base his opinion on? Medical literature or what? He alleges medical literature but the medical literature before the court does not support his conclusion The second thing he based his opinion on would be the alleged occupational exposure that Mr. Grant undertook and those numbers and the data and all of those things, the number of runs it's speculative and it's conjectured to assume that he had sufficient exposure and again, the sufficient exposure is contrary to the medical literature on those arguments as to whether or not a sufficient causal relationship exists between my occupation as a firefighter and the development of your self-carcinoma And how does that pertain to the overhauls? The overhauls, if you can allow me literature and the medical literature takes those into consideration and as far as the overhauls were put before the court in this case Mr. Grant testified that there were occasions when he would remove his self-dependent breathing apparatus to perform overhauls that's not disputed However, there's no actual data as to the exposure he may or may not have incurred during that time These specific fires When did he remove his SCBA? When did he not? How many fires did he remove or not? How many overhauls did he perform? That evidence is not before the court Your time is up right now You'll have time until 5 Thank you, Your Honor May it please the Court Counsel, my name is Tom Ewick and I represent the employee in this matter Brian Grant I'm here today to ask this Court to affirm the opinion and decisions upon review of the commission There was sufficient foundation for Dr. Orr's testimony Much, if not all, of Counsel's City of Brewery's argument with respect to this issue But let's look at what's required to establish the foundation for a doctor's testimony It must be shown that the doctor relies upon facts and data that normally would be relied upon by an expert in this field His opinions cannot be grounded in yes or surmise and must be supported by the facts Well, Counsel told you Dr. Orr's had 2 bases for opinion I would submit he had about 7 or 8 bases When he's asked his opinion on causation he gives it It's then followed up with what he based it on He states at least 5 things He says 1. The history of exposure 2. His knowledge of what types of chemicals firefighters are exposed to 3. The latency period of 20 years that he worked before being diagnosed 4. His knowledge of the epidemiological literature with respect to firefighters' affinity 5. His clinical judgment in the field He then expanded upon chemicals He explained common chemicals which include polyaromatics PAHs benzene, formaldehyde and most importantly in this case, asbestos See, the city of Peoria in the past 6 years has just kind of rushed over this whole deal with asbestos They leave it out It wasn't mentioned one time in the argument here And they say that the literature doesn't support a link between firefighting and cancer But really when you look at Dr. Eggner's testimony they're experts He's saying it's not conclusive There's no definitive proof in the literature That's not the standard Definitive or conclusive proof is not the standard But the literature, it does give a basis for a link And in all the literature 3 of the 6 studies they cite specifically say there is a link between asbestos and kidney cancer Why is that important? Because it was not contradicting the trial that Brian Grant was exposed to asbestos He said he would observe it during fires The chief of the fire department testified on the city's behalf but he acknowledged firefighters accounted Doctors, Oris's opinions were not grounded in guess or surmise They were not speculative He gave adequate foundations adequate basis for each point He discussed the studies And by the way with respect to the book that's being mentioned It's not Dr. Oris's book He was not the author He was one of 3 that said it That's number 1 Number 2 The book was published in 1995 So 13 years before 20 years ago this book was published 18 years before this case went to trial Medicine changes Watch a movie from the 50's and doctors are smoking in the operating room Doctors learn things So to suggest that because this book had some statements from 18 years before trial Oris could not change his opinions based upon new studies is wrong But Oris was only an editor And he's asked about that He's confronted about the opinion of this one person in the book And it's on record Common Law 540 Where he specifically addressed this And he said counsel for Peoria at the time was misreading that portion of the book because he was reading the first sentence of that discussion of the issue as a conclusion But the particular portion went on to make no conclusions about the various studies So there was sufficient foundation for Dr. Oris's testimony The city of Peoria was essentially just asking the court to rewrite the evidence which the court was allowed to do Well it makes the case a little easier If there is sufficient foundation for Oris's opinion and it stands in the record it then gets weighed against Eggner's in the mind of the commission The commission chose Oris over Eggner, right? Correct So you should win the case is your argument, right? Yes Okay There was that issue is reviewed under a manifest way of evidence And I don't believe it's discussed in the brief that no rational charge In fact, it's found in our favor to put more weight on the opinions of Dr. Oris If there are no questions I would ask the support of the department Thank you Thank you, Counsel Counsel, you may reply Just briefly on a couple of points that Mr. Ewick has addressed in this court The commission focuses on two bases for Dr. Oris's opinion In Mr. Ewick's argument again, he references this 20-year period where he was you know, enclosed by the city of Peoria before the diagnosis That's simply inaccurate In this case his expert relied upon that and they keep citing to this 20-year period where in fact it's 18 The reason I believe the commission based their decision and their determination as to who they wanted to put more weight on and they alluded that to the two bases being the medical literature and the exposure analysis because when you look at Dr. Oris's experience clinical judgment and those types of things that were recited by opposing counsel they are not equivalent to Dr. Eggner Dr. Eggner is the more qualified expert here With regard to the asbestos Mr. Green's actual testimony at arbitration and it's within the record before this court that he testified he was uncertain as to whether he had been exposed to asbestos in the fire scene but he believed there may have been asbestos in some of the older structures He wasn't sure There's been this focus on asbestos and there's been the focus on the diesel exhaust in this case and those are again tenuous examples of the type of exposure he performed because those are the only two things that are mentioned in the medical literature that may be associated between lethal carcinoma and firefighter risk But the fact of the matter here is in this particular case Mr. Green did not have sufficient exposure to either of those chemicals and by his own testimony he was unsure whether he was I think all of us here can agree that in older structures there may be asbestos but he didn't know and most importantly Dr. Oris didn't have specific data and this court doesn't have specific data as to the extent to which he was exposed to asbestos would be my response there I didn't get to touch on a couple other things from what I initially argued I would stand on our brief with regard to the fact that Mr. Green's real self-carcinoma did not arise out of and in the course of his employment We've argued that extensively in our brief I would also submit that Mr. Green's PPD award of 20% loss to the man as a whole is excessive and should be reduced by this court That's also discussed at length in our brief Yeah, you relied on 8B1 to support that argument 8.1B? Inaccurately, Your Honor Yeah, because 8.1B went into effect on June 28, 2011 and it specifically says it only applies to injuries occurred on or after September 12, 2011 When did this event when did this man claim he was injured? Prior to that, Your Honor and you're 100% accurate in that regard and that was done in error However, I would submit that those factors as the legislature determined and as this commission now assesses PPD awards are highly relevant in determining this case and that was the purpose of including those factors not necessarily because it was found by those particular factors but the fact that if you look under if you analyze this case for those specific factors I would submit that the decision is excessive with regard to PPD He returned to his full duty within 6-7 weeks He testified that the nasal subcarcinoma and his subsequent treatment did not affect his duty or did not affect his ability to perform his full firefighter duty He was given no occupational restrictions He was given no non-occupational restrictions His future earning capacity was unaffected and he testified both experts testified the likelihood of removal of the remaining kidney was highly unlikely Based on all the arguments I've submitted I would respectfully request that this court overturn the commission's decision and either reinstate the decision of the arbitrator in this matter or issue a decision on their own right pursuant to the Supreme Court rule that we cited in our brief that accurately reflects the record of the court Thank you Thank you counsel Thank you both counsel for your arguments in this matter It will be taken under advisement a written disposition shall issue